UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL DAVID MIER,

              Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

              Defendants.

_____/

Case No. 1:25-cv-1264

Hon. Hala Y. Jarbou

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court

has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison

Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required

to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious,

fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant

immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must

read Plaintiff's *pro se* complaint[1] indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972),

and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible,

---

[1] On December 1, 2025, Plaintiff filed a motion for leave to file a supplemental complaint and attached the proposed supplemental complaint to the motion. (ECF No. 16.) The Court will grant the motion for leave to file a supplemental complaint and accepts the supplemental complaint as filed. (ECF No. 16.) On February 19, 2026, Plaintiff filed a motion for leave to file a second supplemental complaint and attached the proposed second supplemental complaint to the motion. (ECF No. 20.) The Court will grant the motion for leave to file a second supplemental complaint and accepts the supplemental complaint as filed. (ECF No. 20.) Therefore, references to Plaintiff's "complaint" include the supplement filed on October 31, 2025 (ECF No. 12), the first supplemental complaint filed on December 1, 2025 (ECF No. 16-1), and the second supplemental complaint filed on February 19, 2026 (ECF No. 20-1).

*Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.

### Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Thumb Correctional Facility (TCF) in Lapeer, Lapeer County, Michigan. The events about which he complains occurred at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan, and the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the MDOC and MDOC director Heidi Washington.[2] (Compl., ECF No. 1, PageID.1; Second Suppl. Compl., ECF No. 20-1, PageID.96.)

Plaintiff's complaint states that on August 4, 2025, he was transferred to MCF and began having recurring issues accessing photocopy services on loan from the prison law library. (Compl., ECF No. 1, PageID.1–2.) Plaintiff states that he represents himself in *pro per* in child custody litigation. (*Id.*, PageID.1) An evidentiary hearing was scheduled for August 28, 2025, regarding Plaintiff's motions for parenting time/visitation in three circuit court cases. (*Id.*, PageID.1–2.) Plaintiff submitted a request with the prison law library to photocopy three motions to appear by writ, which "were intended to be filed for the pending evidentiary hearing." (*Id.*, PageID.2.) Non-party law librarian "Mrs. Hardiman denied photocopy services because Plaintiff had 'inadequate funds.'" (*Id.*) Plaintiff asserts that non-party Mrs. Hardiman improperly denied Plaintiff's photocopy request because MDOC Policy Directive 05.03.116(O) requires the MDOC to loan funds to prisoners who lack sufficient funds to pay for copies of documents "that are necessary for the prisoner to file with the court or serve on a party to a lawsuit…." (*Id.*) Plaintiff

---

[2] The Court directs the Clerk of Court to add Defendant Washington to the docket as a Defendant.

asserts he missed the deadline to serve the motions to appear by writ with the court (*id*., PageID.3), but ultimately, the August 28, 2025 hearing was "adjourned to allow discovery[,]" (*id*., PageID.6). Plaintiff further alleges that non-party grievance inspector Goostrey "retaliate[ed] against Plaintiff by not processing" one of the grievances that Plaintiff filed against the non-party law librarians for denying Plaintiff's photocopy request. (*Id*., PageID.4.)

On August 27 and 28, 2025, Plaintiff alleges that non-party law librarians Mrs. Hardiman and Mrs. Vallier denied Plaintiff's requests to photocopy his criminal appeal opinion. (*Id*., PageID.4–5.) The law librarians categorized the documents as "research materials" and told Plaintiff that his requests were denied because "research materials do not qualify for a loan." (*Id*., PageID.5.) Plaintiff asserts that his request was not for research, and he explained to Mrs. Vallier that he was required to file a copy of the opinion "with an application to the supreme court," and showed her the applicable court rule. (*Id*., PageID.4). Plaintiff asserts that Mrs. Vallier denied Plaintiff's request for photocopies of a notarized document on September 9, 2025, because she found that the document did not need to be notarized, and therefore, the document did not qualify for a loan. (*Id*., PageID.7.) Additionally, on September 13, 2025, Mrs. Hardiman denied Plaintiff's request to photocopy a notarized fee waiver form for an unspecified reason. (*Id*., PageID.10.)

Plaintiff filed grievances against both Mrs. Hardiman and Mrs. Vallier regarding these incidents. (*Id*., PageID.5.) Plaintiff subsequently filed grievances against the non-party grievance coordinator and the non-party grievance inspector for allegedly retaliating against Plaintiff by not processing his grievances in a timely manner. (*Id*., PageID.5–6.) Plaintiff asserts that "the extension of grievance due dates has caused plaintiff to miss filing deadlines." (*Id*., PageID.15.)

On September 18, 2025, Plaintiff was walking to the law library when a non-party officer told Plaintiff "that [he] would 'end up in the hole' (segregation) if [he] [kept] 'messing with that

lady' referring to Hardiman." (*Id*., PageID.10.) Plaintiff "calmly asked the officer… not to threaten [him]." (*Id*.) The officer "stood up from his chair in an aggressive manner and screamed at Plaintiff to get the 'f[***] out of [his] face.'" (*Id*.) Plaintiff filed a grievance asserting that the non-party officer "was retaliating [Plaintiff's] right to free speech." (*Id*., PageID.11.) The grievance was denied by the non-party warden. (*Id*.) In response, Plaintiff filed a grievance against the warden "indicating the warden was aiding and abetting the denial of access to courts." (*Id*.) On September 22, 2025, Plaintiff was placed on "modified access" for grievances, which "limits prisoners['] ability to file grievances pursuant to P.D. 03.02.130 (JJ)." (*Id*.) Thereafter, Plaintiff sent a kite to the non-party grievance coordinator requesting a grievance because "the warden's request to have [him] placed on modified access was retaliatory for grieving the warden…." (*Id*.)

On September 29, 2025, non-party Mrs. Hardiman denied Plaintiff's request to photocopy a witness/exhibit list because she indicated that "forms do not qualify for a loan." (*Id*., PageID.13.) On October 13, 2025, Plaintiff received another unspecified rejection for a photocopy loan regarding a motion for alternate service that Plaintiff intended to file for a circuit court hearing scheduled for October 30, 2025.[3] (First Suppl. Compl., ECF No. 16-1, PageID.81.)

Plaintiff alleges that the MDOC "is liable for its unconstitutional policy" regarding photocopying. (Compl., ECF No. 1, PageID.16, 17.) Plaintiff further asserts that the "MDOC has refused to take corrective actions towards the staff who have been grieved in this complaint[,]" and "for staff putting false information in grievance responses." (*Id*., PageID.16.) Additionally, Plaintiff claims that "[t]he MDOC's act of omission in failing to take corrective action has created

---

[3] Plaintiff's complaint states that the hearing was scheduled for November 30, 2025. (First Suppl. Compl., ECF No. 16-1, PageID.81.) But this appears to be incorrect because later in the complaint, Plaintiff provides that the hearing occurred on October 30, 2025. (*Id*., PageID.84.)

4

a custom within the department to deny plaintiff access to the courts[,]" and "of retaliating against inmates who engage in protected speech." (*Id.*)

Plaintiff also raises claims regarding his legal mail. Plaintiff's first supplemental complaint states that on October 16, 2025, Plaintiff went to mail his original complaint in this matter, and non-party "PC Wexstaff began reading [his] complaint that was to be sent to this court." (First Suppl. Compl., ECF No. 16-1, PageID.82.) Plaintiff states he also observed non-party Lieutenant Bock reading his complaint. (*Id.*, PageID.83.) About a half an hour later, Plaintiff was called into PC Wexstaff's office and non-party "RUM Parsons stated that they weren't trying to impede [Plaintiff's] ability to send the legal documents and that [Parsons] just wanted to make sure everything was on the 'up and up.'" (*Id.*) Plaintiff confirms that "[a]ll documents were sealed and sent out" that day. (*Id.*)

That same day, Plaintiff alleges that non-party PC Wexstaff read Plaintiff's notarized motion to provide alternate service when Plaintiff gave it to PC Wexstaff to place in the outgoing legal mail. (*Id.*) Non-party RUM Parsons "alleged [Plaintiff] committed a 'felony misconduct'" because it appeared that the notarized part of the motion was altered because the document had been cut and pasted. (*Id.*, PageID.83–84.) Plaintiff was ultimately found not guilty of the misconduct because the administrative law judge found that Plaintiff "cut and pasted the same, notarized document, altering its appearance but not content or notarial part." (*Id.*) Plaintiff asserts the misconduct "was an attempt by the lieutenant, Wexstaff, Berson, and RUM Parsons to derail this current suit in retaliation for filing the complaint earlier that day." (*Id.*, PageID.84 (spelling corrected).)

On October 30, 2025, Plaintiff attended the circuit court hearing on his motions seeking parenting time in two custody cases. (First Suppl. Compl., ECF No. 16-1, PageID.84.) Plaintiff

explained to the circuit court that he attempted to file motions regarding the service of subpoenas on the witnesses he intended to call, but they were "intercepted by the MDOC." (*Id*.) The circuit court indicated that it would not grant Plaintiff an adjournment. (*Id*.) Plaintiff proceeded with the hearing in the first case but withdrew his motion for parenting time in the second case because he "was not able to have witnesses present to testify in [his] favor." (*Id*.) "Because [Plaintiff] had to withdraw the motion … [he] will now have to refile and take months longer to obtain the relief [he is] seeking for [his] children." (*Id*.)

In his second supplemental complaint, Plaintiff asserts that in December 2025, he was transferred from MCF to IBC. (Second Suppl. Compl., ECF No. 20-1, PageID.96.) Plaintiff argues that the transfer was retaliatory and that he lost wages from his job as a laundry porter contrary to Michigan's Whistleblower Protection Act, MCL 15.361 et. seq. (*Id*., PageID.96–97.)

Additionally, Plaintiff raises issues with the cells at IBC. (*See id*., PageID 97–99.) Plaintiff states that the toilet in his cell is "approximately 4 feet from the bottom bunk where [Plaintiff] sleep[s][,]" so Plaintiff often sees his non-party cellmate's exposed genitalia. (*Id*., PageID.98.) On one occasion, a non-party officer informed Plaintiff that his cellmate was masturbating on the top bunk while Plaintiff was laying on the bottom bunk. (*Id*.) Non-party Officer Russell told Plaintiff that his cellmate "had a history of exposing himself to female staff while another inmate was present in the room." (*Id*.) Plaintiff asserts that the "MDOC policy and federal regulations fall short of protecting prisoner-on-prisoner voyeurism" because they "do not recognize voyeurism between inmates to be sexual abuse." (*Id*. (spelling and punctuation corrected).) Plaintiff submitted grievances regarding these incidents pursuant to the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 *et. seq*., but the grievances were denied for being vague. (*Id*., PageID.99.)

Plaintiff asserts that the denial was "another example of machination to hinder [his] ability to get relief in retaliation for utilizing the grievance procedure." (*Id*., PageID.100.)

As relief, Plaintiff seeks monetary damages, as well as equitable, declaratory, and injunctive relief. (*See e.g.* Compl., ECF No. 1, PageID.17; Second Suppl. Compl., ECF No. 20-1, PageID.100–101.)

## II.    Plaintiff's Motion to Provide Alternate Service and Motion for a Temporary Restraining Order

With his complaint, Plaintiff filed a motion to provide alternate service (ECF No. 3) and a motion for a temporary restraining order (TRO) (ECF No. 5).

Plaintiff's motion to provide alternate service is moot because, as set forth in this opinion, the Court will dismiss the complaint for failure to state a claim pursuant to its review under the PLRA, which occurs before the Defendants are served with the complaint. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal."). Therefore, because service on the Defendants is not required at this stage of the proceedings, Plaintiff's motion to provide alternate service will be dismissed as moot.

As to the motion for a TRO, Plaintiff seeks "an order directing MDOC staff to do the following: 1) Process any and all photocopy disbursements immediate or as soon as practicable[;] 2) Provide photocopy services regardless if the document has been notarized or can be reproduced by hand[;] [and] 3) Provide notary services regardless of the condition of the paper being notarized." (Mot. TRO, ECF No. 5, PageID.31.) Plaintiff further provides that "the 23rd and 34th [C]ircuit [C]ourts have adjourned the hearings for parenting time with [Plaintiff's] children on

multiple occasions[,]" and Plaintiff may be forced to resubmit the motion which will prolong the proceedings. (Br. Suppl. Mot. TRO, ECF No. 7, PageID.38.)

In determining whether to grant a TRO, courts consider the following factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

As set forth in this opinion, the Court has determined that on preliminary review, Plaintiff's complaint is subject to dismissal for failure to state a claim. Therefore, Plaintiff has failed to show a likelihood of success on the merits. The Court finds this factor to be dispositive, and that consideration of the other three TRO factors would not change this Court's conclusion. *See Ohio Republican Party*, 543 F.3d at 362. The Court will, therefore, deny Plaintiff's motion for a TRO. (ECF No. 5.)

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

8

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.    Discussion

### A.    Defendant MDOC

Plaintiff names the MDOC as a Defendant.[4] (Compl., ECF No. 1, PageID.17; Second Suppl. Compl., ECF No. 20-1, PageID.100–101.) However, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The State of

---

[4] In part of Plaintiff's complaint, he appears to seek to challenge the constitutionality of the MDOC's photocopying policy. (Compl., ECF No. 1, PageID.16, 17.) Although Plaintiff presents this conclusory and broad claim against the MDOC, the *factual* allegations in the complaint show that Plaintiff is seeking to challenge how non-party individuals applied the policy to his photocopy requests, rather than the validity of the policy as a whole. (*See id.*, PageID.2, 4, 5, 7, 10, 13.)

9

Michigan (acting through the MDOC) is not a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Accordingly, Plaintiff has failed to state a claim against Defendant MDOC upon which relief may be granted, and his claims against Defendant MDOC will be dismissed.

**B.      Defendant Washington**

Plaintiff also names MDOC Director Washington as a Defendant. (Compl., ECF No. 1, PageID.1.) However, Plaintiff fails to name Defendant Washington in the body of his complaint. (*See id*.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–61 (2007) (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore*, 92 F. App'x at 190.

Here, Plaintiff does not name Defendant Washington in the body of the complaint. (*See Compl.*, ECF No. 1.) The United States Court of Appeals for the Sixth Circuit "has consistently

10

held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Therefore, Plaintiff's claims against Defendant Washington fall short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2).

Moreover, to the extent that Plaintiff seeks to hold Defendant Washington liable due to her supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Washington encouraged or condoned any allegedly unconstitutional conduct of subordinates, or authorized, approved, or knowingly acquiesced in their conduct. *See Peatross*, 818 F.3d at 242.

Accordingly, for the reasons set forth above, Plaintiff's claims against Defendant Washington are properly dismissed for failure to state a claim.

### C.      Non-Parties Referenced in Complaint

In Plaintiff's complaint, he describes the actions of several non-parties at MCF and IBC, and he raises First Amendment, Eighth Amendment, Fourteenth Amendment, and state law claims against these non-parties. (*See, e.g.*, Compl., ECF No. 1, PageID.2; First Suppl. Compl., ECF No. 16-1, PageID.83; Second Suppl. Compl., ECF No. 20-1, PageID.96.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action).

Plaintiff raises First and Fourteenth Amendment claims alleging that several non-parties at MCF interfered with Plaintiff's access to the courts by incorrectly applying MDOC policy regarding photocopy loans and reading Plaintiff's legal mail, and that those individuals subsequently retaliated against him for filing grievances related to these claims. (Compl., ECF No. 1, PageID.16.) Plaintiff further raises claims under the Eighth and Fourteenth Amendments

regarding MDOC policies on sexual abuse and conditions of confinement against several non-parties at IBC. (Second Suppl. Compl., ECF No. 20-1, PageID.100.) Plaintiff also raises a state law claim against non-parties under Michigan's Whistleblower Protection Act (WPA), MCL 15.361 *et. seq*., alleging that the termination of his employment at MCF was "in retaliation for reporting violations of laws and regulations." (Second Suppl. Compl., ECF No. 20-1, PageID.97.) However, all of these claims involve MCF and IBC staff that are not named as defendants. Fed. R. Civ. P. 10(a). Accordingly, any intended claims against the non-party individuals or groups of individuals discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

## Conclusion

For the reasons set forth above, the Court grants Plaintiff's motions for leave to file a supplemental complaint and second supplemental complaint (ECF Nos. 16 and 20) and accepts the supplemental complaint and second supplemental complaint as filed. The Court denies Plaintiff's motion for alternate service (ECF No. 3) as moot and denies Plaintiff's motion for a TRO (ECF No. 5).

Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed without prejudice for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b) and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 211–12 (2007).

For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous.

*Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

An order and judgment consistent with this opinion will be entered.

Dated: July 15, 2026                                           /s/ Hala Y. Jarbou
                                                               HALA Y. JARBOU
                                                               CHIEF UNITED STATES DISTRICT JUDGE